IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEREMY SHANE HALL,

    Petitioner,

v.

JOHN MYRICK,

    Respondent.

Case No. 3:15-cv-00060-MO

OPINION AND ORDER

Nell Brown
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

Frederick M. Boss, Deputy Attorney General
Kristen E. Boyd, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

MOSMAN, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his 2007 state-court convictions for Sexual Abuse and Unlawful Sexual Penetration. For the reasons that follow, the Amended Petition for Writ of Habeas Corpus (#16) is denied.

## BACKGROUND

On September 2, 2005, 13-year-old LK was babysitting petitioner's children while he was out on a date. When petitioner returned home, he inappropriate touched LK several times. The next day, LK told a friend what had happened but did not disclose the abuse to her parents until October. When LK's father confronted petitioner with the allegations, petitioner initially denied any inappropriate conduct, but later admitted that he had a drinking problem, had taken off his pants and gotten into bed with LK, could not remember what he had done due to his heavy drinking that night, and asked for forgiveness. Trial Transcript, pp. 952-53.

LK's parents reported the abuse to the police on December 9, 2005, and LK appeared for an interview the following month at the "Kids Center," a child advocacy organization. Interviewer Paula Glesne and physician Michelle Kyriakos conducted the interview where LK recounted the incidents of abuse. Dr. Kyriakos postponed the physical examination until May 2006 because LK was not feeling well on the day of her interview and indicated that she did not wish to continue. *Id* at 1255-56. When Dr. Kyriakos

2 - OPINION AND ORDER

conducted the physical examination in May 2006, she found no abnormalities. *Id* at 1368.

On January 18, 2006, the Deschutes County Grand Jury indicted petitioner on five counts of Sexual Abuse in the First Degree and one count of Unlawful Sexual Penetration in the First Degree. Respondent's Exhibit 102. At trial, Dr. Kyriakos testified that, following the January interview, she had been able to reach a diagnosis to a reasonable degree of medical certainty that LK had been sexually abused. *Id* at 1329. She based her diagnosis on the manner in which LK related the events during the course of the interview. Dr. Kyriakos focused on LK's: (1) verbal description of events, (2) ability to use her body as a reference to indicate what happened; (3) use of multiple details; and (4) the consistency of her core details over time. *Id* at 1333-34. She admitted on cross-examination that the validity of her diagnosis was "dependent upon the truthfulness of what [LK] said about whether she was sexually abused or not[.]" *Id* at 1368. Glesne testified that she looked to many of the same cues from LK to also conclude that LK was the victim of sexual abuse. *Id* at 1226-33.

During closing argument, the prosecutor focused on the consistency of the victim's accounts, as well as the testimony of Glesne and Kyriakos. He also claimed that petitioner's behavior indicated a man with a guilty conscience and made the following statement about the circumstances of his arrest:

> And when he is arrested, how he is indifferent? Never denies. Talked about the

> jail tape. Talks to his mom. He talks to his
> ex-wife. Never once as he testified yesterday
> did he deny. He said it really wasn't my main
> focus because he was trying to get people not
> to talk. Wouldn't that have been the time
> that he would have said I didn't do this.
> This is a big misunderstanding.

*Id* at 1876.

By a count of 11-1 on each charge, the jury convicted petitioner on all counts, and the trial court sentenced him to 225 months in prison. *Id* at 1902-03, 1932.

Petitioner took a direct appeal challenging the imposition of his consecutive sentences in the absence of specific jury findings. The State initially conceded this issue in light of the Oregon Supreme Court's decision in *State v. Ice*, 343 Or. 248, 170 P.3d 1049 (2007), but later successfully sought reconsideration when the U.S. Supreme Court reversed that decision in *Oregon v. Ice*, 555 U.S. 160 (2009). As a result, the Oregon Court of Appeals affirmed the trial court's decision, and the Oregon Supreme Court denied review. *State v. Hall*, 227 Or. App. 504, 206 P.3d 282, *rev. denied*, 346 Or. 364, 213 P.3d 578 (2008). Petitioner's Appellate Judgment became effective on September 18, 2009.

Approximately two weeks later, on October 1, 2009, the Oregon Supreme Court issued its decision in *State v. Southard*, 344 Or. 401, 164 P.3d 351 (2008), wherein it concluded that a medical diagnosis of sexual abuse in the absence of corresponding physical evidence of sexual abuse "does not tell the jury anything that it could not have determined on its own" such that the diagnosis is inadmissible under OEC 403 because its risk of

prejudice outweighs the probative value of the diagnosis. 347 Or. at 142. On June 4, 2010, the Oregon Supreme Court addressed how the admission of such a diagnosis, even where not preserved for purposes of appeal, can nevertheless result in a finding of improper vouching stemming from statements that might otherwise be admissible. *State v. Lupoli*, 348 Or. 346, 234 P.3d 117 (2010).

On August 12, 2010, petitioner filed his petition seeking post-conviction relief ("PCR") in Umatilla County where he alleged, in part, that his trial attorney was constitutionally ineffective for failing to object to the testimony of Glesne and Kyriakos because the testimony contained improper vouching, and because Dr. Kyriakos's diagnosis of sexual abuse was not supported by any physical evidence. Respondent's Exhibit 111. The PCR court denied relief on all of his claims. Respondent's Exhibit 136. The Oregon Court of Appeals affirmed the PCR court's decision without opinion, and the Oregon Supreme Court denied review. Respondent's Exhibits 140, 141.

Petitioner filed this 28 U.S.C. § 2254 habeas corpus case on January 12, 2015. He argues that trial counsel was ineffective for failing to object to: (1) Dr. Kyriakos' medical diagnosis of sexual abuse in the absence of physical findings; (2) the statements offered by Glesne and Kyriakos addressing the characteristics or attributes that a truthful child displays; and (3) the prosecutor's comments in closing on petitioner's exercise of his right to silence. He also argues that direct appellate counsel was ineffective for failing to assign as plain error on appeal a challenge to the court's admission of an expert medical

diagnosis in the absence of corroborative physical evidence. Respondent asks the court to deny relief on these claims because the claim pertaining to appellate counsel is procedurally defaulted, and the state-court decisions denying relief on the claims regarding trial counsel's performance did not unreasonably apply clearly established federal law.

## DISCUSSION

### I. Unargued Claims

With the assistance of appointed counsel, petitioner filed an Amended Petition in which he raises three grounds for relief containing 17 claims. In his supporting memorandum, petitioner chooses to argue the four claims pertaining to the performance of trial and appellate counsel as noted above. These claims correspond to Grounds 2(A), 2(B), 2(C)(9), and 3 in the Amended Petition.

Petitioner does not argue the merits of his remaining claims, nor does he address any of respondent's arguments as to why relief on these claims should be denied. As such, petitioner has not carried his burden of proof with respect to these unargued claims. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims).

### II. Exhaustion and Procedural Default

A petitioner seeking habeas relief must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of habeas corpus claims pursuant to 28 U.S.C. § 2254. *Rose v. Lundy*, 455 U.S. 509, 519

(1982). A petitioner must also present his claims in a procedural context in which its merits can be considered. *Castille v. Peoples*, 489 U.S. 346, 351 (1989). A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

As Ground 3, petitioner asserts that his appellate attorney should have challenged the admission of Dr. Kyriakos' sexual abuse diagnosis where there was no physical evidence to support the diagnosis. He concedes that he failed to raise his Ground 3 claim in Oregon's state courts, but argues that his PCR attorney's failure to raise the claim of ineffective assistance of appellate counsel excuses his procedural default. Inadequate assistance of post-conviction counsel may establish cause to excuse the default of a substantial ineffective assistance of trial counsel claim. *Martinez v. Ryan*, 566 U.S. 1, 4 (2012). However, the holding of *Martinez* does not apply to claims involving the alleged errors of appellate counsel. *Davila v. Davis*, 137 S.Ct. 2058 (2017). Petitioner is therefore unable to excuse his default, and his alternative request for an evidentiary hearing is denied.

### III. The Merits

#### A. Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. Twenty-eight U.S.C. § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

## B. Grounds 2(A) & 2(B): Failure to Object to Expert Testimony

Petitioner argues that his trial attorney was ineffective for failing to object to the testimony of Glesne and Kyriakos on two bases: (1) Dr. Kyriakos predicated her medical diagnosis of sexual abuse only upon the credibility of the victim's disclosure, not any physical evidence of abuse; and (2) both Glesne and Kyriakos engaged in improper vouching when they testified that the victim displayed certain characteristics or attributes that a truthful child displays. Although petitioner argues these claims together, the court takes them in turn.

### 1. Sexual Abuse Diagnosis Absent Physical Evidence

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test established by the Supreme Court to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. at 122.

Petitioner's trial attorney testified during petitioner's PCR proceedings and explained why he did not object to Dr. Kyriakos' sexual abuse diagnosis where it was unsupported by any physical evidence. "[M]y understanding is that I tried the case according to the law as it existed in January of '07. If I'm wrong about that, please let me know. But I believe in January of 2007 you were allowed to do that." Respondent's Exhibit 135, p. 68. He "thought the law was bad" but "did not anticipate there was going to be anytime soon a change in that law." *Id* at 69. The PCR court resolved the issue as follows:

> The case was tried in 2007. State vs. Southard was decided in 2009. At the time of trial, case law allowed experts from Kids Care to testify to a diagnosis of child sexual abuse. Any objection to that testimony would have been overruled so it was not an error by the attorney not to make a useless objection. It would also have been allowed to examine and cross examine the witnesses as to the basis for the diagnosis.

Respondent's Exhibit 136, p. 2.

Petitioner asserts that *Southard* was simply an application of decades of prior Oregon Supreme Court precedent, but this is not the case. At the time of petitioner's trial, the Oregon Court

of Appeals had clearly rejected the argument that ultimately prevailed in *Southard*. *See, e.g., State v. Wilson,* 121 Or. App. 460, 855 P.2d 657, *rev. denied,* 318 Or. 61, 865 P.2d 1267 (1993) (medical diagnosis of sexual abuse without physical evidence was an opinion that might sway jurors, but did not amount to a "*direct* comment on the child's credibility.") (italics in original). As the Oregon Court of Appeals explained in the wake of *Southard*, "the rule regarding expert testimony as to a diagnosis of child sexual abuse was exemplified in [*Wilson*]. . . ." *Umberger v. Czerniak,* 232 Or. App. 563, 564, 222 P.3d 751 (2009), *rev. denied,* 348 Or. 13 (2010). That is to say, until *Southard*, a medical expert's diagnosis of sexual abuse in the absence of supporting physical evidence constituted permissible testimony in Oregon. *Id.*

Although petitioner asserts that the Oregon Court of Appeals' decisions pre-*Southard* were wrongly decided, it is not the province of a federal habeas court to interfere with a state-court interpretation of state law. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). For this reason, the court is also not in a position to disagree with the PCR court's conclusion that an objection would have been "overruled" and "useless" in the context of this case. Given this state-court interpretation of state law, the PCR trial court's decision is neither contrary to, nor an unreasonable application of, clearly established federal law.

///

///

## 2. **Impermissible Vouching**

Petitioner next asserts that trial counsel should have objected to various statements from Glesne and Kyriakos because they focused on whether LK's report of abuse displayed the characteristics of a reliable, credible disclosure. As recounted in the Background of this Opinion, these two experts both testified regarding the manner in which LK described the abuse she suffered, leading them to conclude that she had been the victim of sexual abuse.

Counsel did not believe that the statements warranted an objection. Respondent's Exhibit 135, pp. 122-23. With respect to Dr. Kyriakos' testimony that LK was able to provide a highly detailed account and was consistent in her core details over time, counsel said, "I don't like it at all, but I think under the laws that existed then, it was probably admissible. She was coming close to saying, 'I - I think this child is telling the truth. . . .'" *Id* at 126-27. Counsel stated that he understood that under Oregon law at the time of petitioner's trial, "clearly a witness could not vouch and say, 'I believe another witness is telling the truth or they're lying.'" *Id* at 127. He was not, however, of the opinion that the testimony at issue amounted to this kind of direct statement on credibility, but was instead "sort of borderline" such that "an objection made in front of the jury, it would draw attention to this testimony and quite possibly make things worse." *Id* at 128.

The PCR court found petitioner's strategy to be a reasonable one:

12 - OPINION AND ORDER

> Both sides questioned witnesses and argued
> how an abused child would behave. Pet's
> attorney argued that if really abused, Child
> would have gone to her grandmother's instead
> of spending the night, would have reported it
> immediately, wouldn't have babysat again for
> pet., would not have called him for a ride or
> accepted a ride. These were all necessary
> defense points. The attorney could not have
> objected to that line of questioning from the
> DA and then expected to get it in for the
> Pet. No inadequacy on the part of the
> attorney. Reasonable strategy.

Respondent's Exhibit 136, p. 2.

It is not clear that trial counsel needed to allow the expert statements at issue in order to make the defense points the PCR court identifies, all of which were available from non-expert sources. Nevertheless, given the state of the law at the time of petitioner's trial, counsel reasonably believed that an objection was not warranted.

In *State v. Middleton*, 294 Or. 427, 438 (1983), the Oregon Supreme Court stated, "We expressly hold that in Oregon a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth." However, this holding did not constitute a total ban against expert testimony regarding the indicia of reliability of a victim's statements. In *Middleton*, the Oregon Supreme Court provided that "if a witness is accepted as an expert by the trial court, it is not error to allow testimony describing the reaction of the typical child victim of familial sexual abuse and whether a testifying victim . . . reacted in the typical manner. . . ." *Id.*

In the wake of *Middleton,* Oregon courts continued to allow indirect comments on the credibility of a victim in child sexual abuse cases. *See, e.g., State v. Hilaire,* 775 P.2d 876 (1989) (police officer testifying to typical behavior of child sex abuse victim); *State v. Butterfield,* 874 P.2d 1339, 1345-46 (1994) (changing explanations for injures a "classis diagnostic indicator"); *State v. Arnold,* 893 P.2d 1050, 1053 (1995) (victim was "spontaneous" and "eager to disclose"); *State v. Remme,* 23 P.3d 374, 383 (2001) (expert could provide "useful, nonconclusive information from which inferences as to credibility may be drawn"). Thus, the Oregon Supreme Court's *Southard* decision in 2009 constituted a significant shift in the law when it forbade the admission of medical diagnoses of sexual abuse based only on whether the expert believed the victim was telling the truth.

One year after *Southard,* the Oregon Supreme Court went a step further when it again addressed the admissibility of expert statements touching on credibility in the context of a sexual abuse conviction. In *Lupoli,* the Oregon Supreme Court stated that it would ordinarily be proper for experts to testify as to: (1) whether a victim's statements were developmentally appropriate for her age; (2) the victim's demeanor and any changes in that demeanor; (3) whether the disclosure contained any spontaneous and descriptive details; and (4) circumstances indicating the child's suggestibility or the possibility she was coached regarding her allegations. 348 Or. at 362. However, while it found that this kind of testimony could assist a jury, it concluded that such testimony would not be proper where it was

intertwined with an expert medical diagnosis of sexual abuse in the absence of corroborating physical evidence. In other words, in a post-*Southard* world, indirect comments on the credibility of the accuser that would ordinarily be proper would no longer be admissible in cases that also involved a medical diagnosis of sexual abuse in the absence of supporting physical evidence.

Petitioner's claim of ineffective assistance of counsel must be viewed through a pre-*Southard* lens because "*Strickland* does not mandate prescience, only objectively reasonable advice under prevailing professional norms." *Sophanthavong v. Palmateer*, 378 F.3d 859, 870 (9th Cir. 2004). Glesne and Kyriakos testified as to LK's verbal description of events, how she used her body as a reference, the fact that she gave a detailed account, and the consistency of the core details over time. Where the Oregon Supreme Court had not decided *Southard,* even in the context of a sexual abuse diagnosis without any supporting physical evidence, these were the kinds of permissible, indirect statements that properly pertained to credibility. As the Oregon Supreme Court recognized in *Middleton,* "Much expert testimony will tend to show that another witness is telling the truth. This, by itself, will not render evidence inadmissible." 294 Or. at 435 (internal citation omitted).

Trial counsel testified that he believed these statements were admissible at the time of petitioner's trial, and his belief is supported by Oregon law.[1] Consequently, without the benefit of

---

[1] As petitioner points out, counsel did object in one instance when Glesne testified that the victim's "verbal response adds to the reliability of the child's statement." Trial Transcript, p. 1230. Counsel successfully objected

the *Southard* and *Lupoli* decisions, counsel was under no duty to object. Accordingly, the PCR court's decision did not unreasonably apply clearly established federal law when it denied relief on this claim.

### C. Ground 2(C)(9): Prosecutors Comments During Closing

As his final claim, petitioner alleges that the prosecutor's comments on his silence identified in the Background of this Opinion were improper insofar as they highlighted for the jury that petitioner did not assert his innocence at the time of his arrest. Petitioner faults trial counsel for not objecting or moving for a mistrial.

Trial counsel testified as to this issue during petitioner's PCR hearing. He indicated that, as a general matter, whether he would object during a prosecutor's opening or closing arguments "depends on how egregious things are. I objected during final arguments in cases that were lost. And I sometimes try to analyze what happened. I thought that it hurt." Respondent's Exhibit 135, p. 83. With respect to the specifics of petitioner's case, counsel reviewed the relevant passage and explained as follows:

> Huh. That is close. My judgment is that it would have done more harm, to be effective at that point, than it would have helped us, especially - yeah, in that case.
>
> If we had - let's say I were to object, sustained and asked for a curative instruction, I just think it would be harmful.

---

"to this witness talking about the reliability of a person's statement." *Id.* This objection to a direct opinion pertaining to reliability is consistent with counsel's view of Oregon law at the time of petitioner's trial.

> It was -- this was sort of just -- the jury knew what had happened. They knew that, you know, there'd been these phone calls and said, "Round up [petitioner's daughter], don't let her talk to the police." Obviously, they knew he had made statements.
>
> So in my judgment, it would have underscored this. It would have made it look like it was something that we thought was powerfully damaging and had to control and therefore should in fact be more powerful and meaningful to the jury (inaudible).

*Id* at 85-86.

The PCR court agreed:

> The . . . DA comment was that after his arrest, pet didn't deny the charges. This is much more likely to have been seen as a comment on his right to remain silent and would most likely have been sustained. Attorney testified that he did not wish to call attention to it by making an objection in front of the jury. That is more problematic, but if he had made the objection and it had been sustained, then what? A curative would have emphasized it to the jury. Attorney could have moved for a mistrial and it would have been arguable, but there is nothing to indicate that attorney wanted a mistrial in this case. It appears that he thought it was going well and there is no evidence to the contrary. His decision not to object then becomes a reasonable one.

Respondent's Exhibit 136, p. 3.

Petitioner claims that where it is obviously improper to comment on a criminal defendant's silence, *Doyle v. Ohio*, 426 U.S. 610 (1976), a successful objection to the prosecutor's improper comments on his silence would not have posed any downside to his defense. However, counsel's decision not to object was based, in part, on his perception of the prosecutor's

17 - OPINION AND ORDER

comment as "one of these things where it's very mild . . . it obviously wasn't a direct comment on its way to (inaudible) such as what this guy got a lawyer or what . . . innocent person would do such a thing." Respondent's Exhibit 135, p. 83. Counsel therefore believed that even a successful objection might have been amounted to a Pyrrhic victory where it served to highlight the issue of petitioner's silence for the jury. This court views counsel's strategy as an appropriate one. *Strickland*, 466 U.S. at 689. At a minimum, petitioner has not shown that the PCR court's decision was so clearly erroneous that no fairminded jurist could agree with it. *Richter*, 562 U.S. at 102. Accordingly, the PCR court's decision to deny relief on this claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

## CONCLUSION

For the reasons identified above, the Amended Petition for Writ of Habeas Corpus (#16) is denied. The court grants a Certificate of Appealability only as to the issues addressed in Section III(B) & III(C) of this Opinion.

IT IS SO ORDERED.

DATED this 30 day of August, 2017.

_____
Michael W. Mosman
United States District Judge